THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
EDWARD J. FUENTES, Defendant-Appellee.

Third District    No. 80-160

Opinion filed December 16, 1980.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant, Edward J. Fuentes, was indicted on counts of

possession of cannabis and unlawful use of weapons. On February 7, 1980, he filed a motion to suppress both the cannabis and weapons which was granted on March 5, 1980. Pursuant to Supreme Court Rule 604(a)(1), the People appeal the trial court's suppression of evidence.

On January 28, 1980, a two-count indictment was returned against the defendant. Count I charged him with the offense of possession of more than 30 grams of cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)). The second count alleged that he knowingly possessed a bludgeon, commonly referred to as "nunchuks". (Ill. Rev. Stat. 1979, ch. 38, par. 24—1(a)(1).) Fuentes moved to suppress the evidence supporting the allegations and on February 19, 1980 a hearing was conducted on that motion.

According to the testimony at the hearing, the defendant and a companion had started walking up the entrance ramp to southbound Interstate 57 outside Kankakee at about 1:30 p.m. on January 17, 1980. He testified that he was walking upon an unimproved strip of dirt between the shoulder of the road and a parallel drainage ditch. As he walked along the ramp some blankets fell out of his backpack which he carried. As the defendant knelt down and returned the blankets to his backpack, State Trooper Sherman LaCost stopped behind them in his squad car. Fuentes temporarily left his backpack on the ground and walked to the squad car hoping that they had obtained a ride. The trooper then exited his vehicle and began walking toward the defendant.

The trooper asked Fuentes for identification. Fuentes replied he had none and was then ordered by Trooper LaCost to place his hands against the squad car. Fuentes complied and was patted down. Next, he was ordered to empty his pockets, which he did. LaCost then asked Fuentes where he kept his cocaine. He replied that he had no cocaine, but LaCost kept insisting that Fuentes had either cocaine or marijuana. Fuentes finally admitted he had some marijuana seeds in his backpack. LaCost responded, saying that he was going to take the backpack to the county jail and tear it apart to find whatever contraband Fuentes had in it.

Fuentes was then handcuffed, placed in the squad car and ticketed for improperly walking on a highway (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1007). The defendant was unable to post the $35 bail, so he was taken into custody along with his backpack. At the county jail, the backpack was searched. It contained, *inter alia*, a glass jar holding approximately 46 grams of marijuana seeds, a pair of "nunchuks," a weighing scale, knives, and written instructions on how to cut and price marijuana.

At the hearing, Trooper LaCost offered several reasons for his search of the backpack. Initially, he said that Fuentes consented to the search. Then he searched the pack to inventory its contents. He stated that the search was "custodial, [that is] everyone brought in is searched and their possessions are searched for contraband."

On the closing arguments, the State argued that the search was merely an inventory of Fuentes' possessions performed pursuant to a lawful arrest. The defendant argued that the search was executed without a warrant, was not made incident to a lawful arrest and was made without his consent. The court granted the motion to suppress the evidence, holding:

> "[T]here is [a] serious question in this court's mind as to whether or not a lawful arrest was effected and the search incidental thereto. The defendant testified to circumstances which do not seem to indicate to this court that he was in fact violating the law for which he was arrested by the State Trooper. The officer offered little or no testimony to rebut the testimony of the defendant, but it was established that the defendant did plead guilty to a traffic ticket. As many people plead guilty to traffic tickets as a matter of convenience, the court does not feel that the fact that defendant plead guilty to this ticket is sufficient to allow the court to presume that the officer did in fact have grounds to effect the arrest. Even if the arrest is said to be lawful the court does not feel that the officer testified to any of the exceptions authorized by Section 108—1 of Chapter 38, Illinois Revised Statutes."

The court additionally found that LaCost could have easily obtained a search warrant if in fact he did have probable cause to search the backpack. The court, relying on Trooper LaCost's characterization of the search as custodial, rejected the State's argument that the search was in fact an inventory and stated, "[the] inference to the court is that the officer is going to search anyone regardless of what he is arrested for in hopes that he find evidence of other crimes without any knowledge or suspicion that the person had committed any other offense."

The State appeals, arguing that the trial court erroneously granted the defendant's motion to suppress because the contraband would have inevitably been discovered pursuant to a lawful inventory search. In response the defendant argues that: (1) The State waived the inevitable discovery theory because it failed to originally raise it at the motion hearing; (2) the inevitable discovery rule should not be applied to the case at bar; and, (3) even if the inevitable discovery rule does apply, the inventory search exception to the fourth amendment warrant requirement does not extend to closed, personal containers such as the defendant's backpack. We agree with the defendant that the State waived its inevitable discovery theory and affirm the trial court's order granting the motion to dismiss without reaching his second and third arguments.

■■ The standard of appellate review of a suppression order is whether the trial court's ruling was manifestly erroneous. (*People v. Clay* (1973),

55 Ill. 2d 501, 505, 304 N.E.2d 280, 282; *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513). This standard of review applies to findings of fact in connection with a motion to suppress evidence and statements made by the defendant. *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.

During the hearing on the motion to suppress evidence, the trial court found the arrest for improperly walking on a highway to be unlawful. According to the Illinois Vehicle Code, section 11—1007(c), "[w]here neither a sidewalk nor a shoulder is available, any pedestrian walking along and upon a highway shall walk as near practicable to an outside edge of a roadway * * *." (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1007(c).) The court heard uncontroverted evidence that Fuentes was walking on a strip of dirt between the shoulder of the road and a parallel drainage ditch. We find the trial court's declaration that the arrest was unlawful was not manifestly erroneous.

■■ The fourth amendment to the United States Constitution guarantees persons the right to be free from unreasonable searches and seizures. It protects individuals from unreasonable and arbitrary governmental intrusions into their legitimate expectations of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 581-82, 88 S. Ct. 507, 511.) As such, the application of the fourth amendment is not limited to the person; instead, it extends to searches of objects in which individuals have legitimate privacy interests. To this end, the warrant clause makes a significant contribution to that protection in that it provides the detached scrutiny of a neutral magistrate, which is a more reliable safeguard against improper forays than the hurried judgment of a law enforcement officer. (*United States v. Chadwick* (1977), 433 U.S. 1, 9, 53 L. Ed. 2d 538, 547, 97 S. Ct. 2476, 2482-83.) But because the fourth amendment is premised on reasonableness, courts have recognized several exceptions to the warrant requirement where the circumstances indicate that a warrantless search would be reasonable. One of those exceptions is the inventory "search" approved in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092. Although courts have not expressly recognized inventorying as a search because an inventory is made for reasons other than seizure of contraband, the inventorying is clearly an intrusion which is tested for its constitutionality by an application of the fourth amendment reasonableness standard. (*People v. Hamilton* (1979), 74 Ill. 2d 457, 465, 386 N.E.2d 53.) Of course, any contraband discovered pursuant to a valid inventory is admissible.

■■ In *Opperman*, the court ruled that an automobile inventory executed according to standard police practices was reasonable because of the diminished privacy expectations found in an automobile and the inventory furthered three valid governmental policies, namely, the protection of the owner's property while it remains in police custody, the protection

of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. (*South Dakota v. Opperman* (1973), 428 U.S. 364, 369, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3096-97.) But before the police can lawfully inventory, they must establish probable cause to take lawful custody of the item to be inventoried. In other words, there must be a lawful basis for an inventory, such as contemporaneous lawful detention of the arrestee (2 W. LaFave, Search and Seizure §5.5, at 355-56 (1978)), or, as in *Opperman*, a vehicle which clearly violated a parking regulation. In the case at bar, the trial court properly found no probable cause to support Fuentes' arrest for improperly walking on a highway and, therefore, the police had no lawful basis for inventorying his backpack.

Nevertheless, the State attempts to establish a lawful basis for an inventory search incidental to Fuentes' post-arrest detention by arguing that the contraband seized should not have been excluded because it would inevitably have been discovered pursuant to a lawful inventory search. Neither the United States Supreme Court nor our supreme court has expressly sanctioned the legitimacy of the inevitable discovery rule. We briefly comment upon it here to introduce our waiver discussion.

The inevitable discovery test is a product of the current dissatisfaction with the fourth amendment's exclusionary rule which was applied to the States in *Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. Not only does the rule exclude evidence directly gained from the initial police misconduct, it also excludes so-called derivative or secondary evidence culled from the initial illegality (*Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 64 L. Ed. 319, 40 S. Ct. 182). Courts are extremely dubious of the alleged deterrent value of the exclusionary rule, which usually excludes highly probative evidence where the "constable blunders." (See *Stone v. Powell* (1976), 428 U.S. 465, 49 L. Ed. 2d 1067, 96 S. Ct. 3037; *United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613.) Obviously, this blunder is magnified, sometimes out of proportion, by excluding derivative evidence as well as direct evidence. In *Brown v. Illinois* (1975), 422 U.S. 590, 608-09, 45 L. Ed. 2d 416, 430, 95 S. Ct. 2254, 2264, Justice Powell said, "in some circumstances strict adherence to the Fourth Amendment exclusionary rule imposes greater cost on the legitimate demands of law enforcement than can be justified by the rule's deterrent purpose."

One limitation on the exclusionary rule's wide swath as interpreted in *Silverthorne* is found in *Silverthorne* itself. There, the court admitted tainted derivative evidence where police learned of the derivative evidence from an independent source. (See *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407). The *Silverthorne* "independent source" test was recently reiterated using the unique fourth

amendment nomenclature in *Brown v. Illinois* (1976), 422 U.S. 590, 609, 45 L. Ed. 2d 416, 430, 95 S. Ct. 2254, 2264:

> "The notion of the 'dissipation of the taint' attempts to mark the point at which the detrimental consequences of illegal police action becomes so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost."

The inevitable discovery test is a variation upon the "independent source theory," but it differs in that the question is not whether the police did in fact acquire certain evidence by reliance upon an untainted source, but instead whether the evidence found because of a fourth amendment violation would inevitably have been discovered lawfully. (3 W. LaFave, Search and Seizure §11.4, at 612 (1978).) In essence, the tainted evidence is admissible where the State introduces a hypothetical chain of events based on routine police procedures which demonstrate that inevitably the police would have obtained the evidence. While we express no view on the propriety of this test, we note that a less-than-restrained application of it surely might provide police with a convenient subterfuge for subverting at will the fourth amendment. This concern is compounded by some courts applying the inevitable discovery test not only to tainted derivative evidence but to primary evidence as well. *Clough v. State* (1976), 92 Nev. 603, 555 P.2d 840.

In the case at bar, the State seeks to dissipate the tainted contraband by arguing that it would inevitably have been seized pursuant to a lawful inventory search. The defendant responds, alleging that the State waived the inevitable discovery test at the trial because it argued only the lawfulness of the arrest and incidental inventory search. We agree with the defendant. The inevitable discovery test, as we have noted above, requires the State to demonstrate that had the police pursued their routine investigatory practices, the evidence would have been seized. For the State to prevail on this ground, it must first assume that an illegal search or arrest was made which created the taint. Secondly, it must demonstrate a hypothetical chain of events based on routine police investigatory practices which would inevitably have led to the lawful discovery of the tainted evidence. Then the taint or illegality is dissipated and the contraband becomes admissible. The State argues that no waiver occurred because at the suppression hearing it argued a lawful inventory search and, on appeal, its inevitable discovery position is likewise premised upon the theory of inventory. We disagree. They are two distinct theories of fourth amendment law which by coincidence end in an inventory search.

The accepted rule of appellate review states that an issue not raised before the court below is waived for appeals purposes. In the recent case of *People v. Bullis* (1980), 85 Ill. App. 3d 693, 694, 407 N.E.2d 1100, 1102, we quoted the following:

"It is an accepted principle of law that an issue not presented to or considered by the trial court cannot be raised by the appellant for the first time on review. * * * However, this rule has not been universally applied. There are matters and rights so fundamental that they must be considered, whenever initially raised. * * * But the rule is founded on some rather basic considerations, which include the following: that litigation should not be presented piecemeal; and that all parties are entitled to have matters determined as quickly as possible and at one trial, if possible. The latter consideration is particularly true of a defendant in a criminal action. Also, the trial court should be given an opportunity to consider the issues or theories which the appellant, on review, assigns as error in its judgment. The failure to urge a particular theory before the trial court will often cause the opposing party to refrain from presenting available pertinent rebuttal evidence on such theory, which evidence could have a positive bearing on the disposition of the case in both the trial and reviewing courts." *People v. McAdrian* (1972), 52 Ill. 2d 250, 253-54, 287 N.E.2d 688, 690.

■■ At the suppression hearing, the State argued only that Fuentes was lawfully arrested for improperly walking on a highway and that the contraband was lawfully seized pursuant to an inventory search. The State failed to reveal its hypothetical independent source for the trial court's consideration, and consequently the State waived its inevitable discovery theory.

Accordingly, we affirm the order of the Circuit Court of Kankakee County suppressing the evidence.

Affirmed.

STOUDER and BARRY, JJ., concur.