THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SIEGFRIED SCHULTZ, Defendant-Appellant.

First District (3rd Division)    No. 79-1469

Opinion filed February 25, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Barry S. Pechter, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

At a bench trial, Siegfried Schultz, the defendant, was convicted of robbery and was sentenced to three years' imprisonment. He contends on appeal that this motion to suppress evidence seized during an inventory search of his automobile was improperly denied and that he was not proved guilty beyond a reasonable doubt.

Patrick Bulow, the complainant, testified that he was at Chet's Melody Lounge in Justice, Illinois, on the evening of January 3, 1979. He had cashed an employment check that afternoon and received $443 in small bills. At approximately 8 p.m., he received a telephone call at the lounge from the defendant. Bulow agreed to drive the defendant to the lounge and to give the defendant's car, which was parked in the lounge's

lot, a "jump." During the evening, in the defendant's presence, Bulow paid for several drinks from the money in his wallet.

The defendant left the lounge between 11 and 12 o'clock. When Bulow departed between midnight and 12:30 a.m., the defendant left his parked car, began "wrestling" with Bulow and grabbed Bulow's wallet and threw it. After Bulow recovered the wallet, the defendant took him to a vacant field near the lounge and wrestled him to the ground. The defendant took Bulow's wallet, removed the money from it and returned the wallet to Bulow's pocket. When the defendant tried to force Bulow into his car, Bulow escaped and ran back into the lounge. Bulow testified that the scuffle outside the lounge lasted approximately a half hour.

George Morisette testified that he arrived at Chet's Lounge at approximately five to 10 minutes before midnight on January 3, 1979. He did not see Bulow in the lounge at that time but saw him run into the lounge about 10 or 15 minutes later. Morisette went outside the lounge with several patrons and observed Frank Cundari, another patron, talking to the defendant about money. Cundari asked the defendant if "he had it" and the defendant said, "Yes, I have it." Morisette testified that the defendant also admitted to Cundari that he had hit Bulow.

Betty Valencia testified that she arrived at Chet's Melody Lounge at 12:10 a.m. on January 4, 1979, and observed Bulow and the defendant inside the lounge. She saw them leave the lounge between 12:20 and 12:30 a.m. and saw Bulow return full of blood at 12:45 a.m. Valencia went outside the lounge and heard the defendant say to Cundari "I have got it."

Police officer Patrick McDonald testified that he was employed by the village of Justice on January 4, 1979. Pursuant to an assignment, he arrived at Chet's Melody Lounge at 12:38 a.m. Officer McDonald spoke to Bulow, arrested the defendant and placed him in the squad car. In accordance with police policy he called for a truck to tow the defendant's car, which was parked in the lounge's lot. The car was not towed as part of the investigation nor at the request of the lot's owner.

At the Justice police station McDonald and the defendant discussed the defendant's green parka jacket, which had been recovered from the defendant's car. On the jacket was a wet, reddish-brown substance which appeared to be blood. Inside the pockets was United States currency amounting to $441 in small bills. The wet, reddish-brown substance also appeared on one $5 bill.

The defendant objected to the offer of the currency into evidence and asked that it be suppressed because it was recovered when his automobile was improperly seized and searched. The trial court denied this motion to suppress and the evidence was admitted. The State rested, and the defendant did not present any evidence in his defense.

On appeal the defendant seeks reversal of his conviction because he was not proved guilty of robbery beyond a reasonable doubt, since his conviction was based on evidence that was improbable, unconvincing and contrary to human experience. The defendant relies on discrepancies in testimony as to the times he and Bulow left Chet's Melody Lounge and how long the alleged robbery lasted. The defendant also argues that his alleged actions—returning Bulow's wallet and not fleeing when Bulow ran back into the lounge—were inconsistent with those of a criminal.

Slight testimonial discrepancies do not destroy the credibility of a witness but go to the weight of that testimony. (*People v. Villalobos* (1979), 78 Ill. App. 3d 6, 396 N.E.2d 1081.) In a case tried without a jury it is the function of the trial judge to determine the weight to be afforded conflicting testimony (*People v. Clark* (1964), 30 Ill. 2d 216, 195 N.E.2d 631), and the reviewing court will not substitute its judgment for that of the trial judge unless the evidence is so improbable that it raises a reasonable doubt of the defendant's guilt. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840.

■■ We believe the inconsistencies in testimony that were cited by the defendant are not so great as to raise a reasonable doubt of the defendant's guilt. The trial judge's resolution of the conflicting testimony in favor of the State was proper since the witnesses' recollections of the time when the robbery occurred were mere estimations and were incidental to the issue of whether the witnesses could place the defendant at the scene of the crime. *People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899.

We also reject the defendant's argument that his actions during and after the alleged robbery defied common experience. The defendant contends that it is incredible to believe that a person having the criminal intent to commit a robbery would force the victim into a car after taking money from the victim's wallet, return the empty wallet to the victim during the course of the robbery and then remain at the scene of the crime after the victim has fled. The defendant relies on four cases wherein criminal convictions were reversed due to improbable and unsatisfactory evidence. (*People v. Dawson* (1961), 22 Ill. 2d 260, 174 N.E.2d 817; *People v. Sowers* (1976), 36 Ill. App. 3d 599, 344 N.E.2d 800; *People v. Smiley* (1975), 32 Ill. App. 3d 948, 337 N.E.2d 290; *People v. Garner* (1974), 19 Ill. App. 3d 728, 312 N.E.2d 678.) We find these cases distinguishable because of the existence of such additional factors as the weak credibility of the victims and/or witnesses (*Sowers; Smiley; Garner*), a strong and uncontradicted alibi by the defendant (*Sowers*), and improbable testimony con-

cerning the partial return of the stolen proceeds to the victims (*Dawson; Sowers*).

■■ The defendant cites the reversals in *Dawson* and *Sowers* which were based in part on the failure of the alleged robbers to flee. In *Sowers*, however, the alleged victim testified that the robber fled the scene but only after he had counted up the proceeds of the robbery. In *Dawson* the evidence showed that the robber made no attempt to leave the scene, but the additional testimony making the robbery unlikely was the fact that the defendant was a police officer who showed his badge and gun and threatened to call the police. Testimony that an alleged criminal did not flee the scene of the crime merely goes to the weight of the evidence establishing guilt. (*People v. Neal* (1974), 15 Ill. App. 3d 940, 306 N.E.2d 43.) Having reviewed the cases cited by the defendant, we cannot agree that his alleged conduct was similarly contrary to human experience. Therefore, we will not reverse his conviction on this basis.

The defendant's second argument is that the warrantless seizure of his car and subsequent inventory search of his car and jacket were illegal. He contends that the currency discovered as a result of this search was erroneously admitted into evidence and that this error entitles him to a new trial.

In support of the search and seizure, the State relies on *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, and *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798, *cert. denied* (1977), 431 U.S. 918, 53 L. Ed. 2d 229, 97 S. Ct. 2184. These cases upheld the practice of conducting an inventory search of an impounded vehicle as a response to the need to protect the owner's property while it remains in police custody, to protect the police against claims or disputes over lost or stolen property and to protect the police from potential danger. Inventory searches were viewed as essential to respond to incidents of theft or vandalism. It should be noted however that, unlike the facts in the instant case, the lawfulness of the impoundment of the vehicles was not in issue in either *Opperman* or *Clark*. The *Clark* opinion stated that the defendant did not claim any illegality in this regard (*Clark*, at 172),[1] and in *Opperman* the court held that the defendant's car was lawfully impounded because it was illegally parked for an extended period of time (*Opperman*, at 375).

■■ In determining whether an inventory search is proper and reasonable, the threshold question is whether the prior impoundment was proper since the need and justification for the inventory arises from the impoundment. (See, *e.g., Brown v. Superior Court* (1978), 119 Ariz. 205,

---

[1] In *Clark* the defendant's car stalled and was blocking traffic.

580 P.2d 343; *Granville v. State* (Fla. App. 1977), 348 So. 2d 641; *State v. McDaniel* (1978), 156 N.J. Super. 347, 383 A.2d 1174. See generally Annot., 48 A.L.R.3d 537, 551-54 (1973).) It is beyond challenge that the police have authority to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience. (See *South Dakota v. Opperman.*) Justification for impoundment also exists when the owner of property on which the arrestee's vehicle is parked requests that it be removed. (See *State v. Cash* (Fla. App. 1973), 275 So. 2d 605.) The fact that the arrestee's car would be left unattended is not sufficient reason for impounding the arrestee's vehicle. *State v. McDaniel.*

■■ The State contends that the defendant's car was lawfully impounded because police officer McDonald was following the Justice Police Department policy to impound all vehicles of arrested persons when the vehicles are not parked on their owners' properties. However, the existence of a police regulation cannot be used as a predicate to determine the lawfulness or reasonableness of an inventory search of a vehicle. (See *People v. Robinson* (1971), 36 App. Div. 2d 375, 320 N.Y.S.2d 665.) Were we to hold otherwise, we would be granting the police unlimited authority to violate the property rights of individuals guaranteed and protected by the fourth amendment of the United States Constitution.

The State also contends that the defendant's vehicle was impounded by the police for the defendant's benefit. The State suggests that the defendant's vehicle was susceptible to theft and vandalism by several of the lounge's patrons who were friends of Bulow. The record does not support this argument, however, since police officer McDonald testified that the defendant's vehicle was impounded solely on the basis of the police policy requiring such action.

The facts in the instant case show that the defendant's car was lawfully parked in front of Chet's Melody Lounge. There had been no request by the proprietor of the lounge nor by the defendant to tow the defendant's car. In a case factually similar, *People v. Valdez* (1980), 81 Ill. App. 3d 25, 400 N.E.2d 1096, the defendant was arrested in a restaurant and his car, which was parked in the restaurant's lot, was towed and its contents inventoried by the police. The court held that the inventory search was improper because there was no showing that the police had any authority to take custody of the defendant's car. There was no evidence that any restaurant personnel directed or requested the police to remove the car nor did the defendant consent to the police taking custody. The court relied on *People v. Von Hatten* (1977), 52 Ill. App. 3d 338, 367 N.E.2d 556, for the proposition that law enforcement officials have the right or duty to conduct an inventory search only where they have some responsibility for the vehicle or its contents.

■■■ Applying *Valdez* and *Von Hatten* to the case at bar, we hold that the defendant's car was unlawfully impounded and searched and that the trial court erred in refusing to suppress the evidence seized as a result of this search. Since there is a reasonable possibility that the evidence obtained as a result of the illegal search might have contributed to the defendant's conviction, we cannot say that the error committed at trial was harmless beyond a reasonable doubt. (See, *e.g., People v. Bascomb* (1979), 74 Ill. App. 3d 392, 392 N.E.2d 1130.) Therefore, the defendant's conviction must be reversed, and a new trial is required.

For the foregoing reasons the judgment of the Circuit Court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded for a new trial.

RIZZI, P. J., and McNAMARA, J., concur.