THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FRED D. BRAASCH, Defendant-Appellee.

Second District   No. 83—1

Opinion filed March 19, 1984.

748

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, of counsel), for the People.

John F. Donahue, of Oak Brook, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

The State brings this interlocutory appeal (87 Ill. 2d R. 604(a)(1)) from an order of the trial court which granted the motion of the defendant, Fred Braasch, to suppress cannabis which an Illinois State police trooper discovered pursuant to an inventory search inside a paper bag in the trunk of the automobile which defendant was driving.

On appeal, the State contends that the trial court erred when it granted the defendant's motion to suppress, because (1) cannabis was discovered pursuant to a valid inventory search of the vehicle; (2) the cannabis was admissible under the theory of evidence discovered incident to a lawful custodial arrest; and (3) the defendant did not have standing in the first place to seek suppression of the cannabis.

The defendant was charged with the unlawful possession of more than 30 grams but less than 500 grams of a substance containing cannabis. (Ill. Rev. Stat. 1981, ch. 56½, par. 704(d).) Defendant filed a motion to suppress the evidence, a quantity of cannabis, which a State trooper seized from the automobile defendant was driving. The motion alleged that the warrantless search of the vehicle and seizure of the cannabis following his being stopped for a traffic violation constituted a violation of the defendant's rights under the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6 of the Illinois Constitution (Ill. Const. 1970, art. I, sec. 6).

At the suppression hearing the defendant testified that he was driving his mother's vehicle on Interstate Highway 55 (I-55) near Cass Avenue at approximately 1:40 a.m. on January 26, 1982. At that time

a State trooper stopped the defendant for failure to use a turn signal when changing lanes. According to the defendant, he had a beer bottle on the floor of the vehicle, and the trooper noticed it. The trooper asked the defendant whether he possessed a driver's license, and the defendant responded in the negative. The trooper advised the defendant that he was being placed under arrest for driving under the influence of alcohol.

After the trooper handcuffed the defendant and placed him in the front seat of the squad car, he called in and determined the car was not stolen. Then he returned to the vehicle the defendant was driving, checked the inside of the car, removed the keys from the ignition, and opened the trunk of the automobile. The trooper searched the trunk and found a brown paper bag which contained marijuana. Defendant testified the top of the bag was "closed up," or "wrapped down, not folded." The defendant related further that the trooper did not display a search warrant for the car, did not have permission to remove the keys from the ignition, and did not inform the defendant that he was acting pursuant to an outstanding arrest warrant for an unrelated offense. Defendant stated he had placed a small quantity of marijuana in a bag into a tool box on the back floor which was still there when he recovered the car.

Ed Donath, an Illinois State police trooper, recounted that he was on patrol on I-55 on the morning in question when he observed a vehicle driving in an erratic manner, weaving from lane to lane. After following that automobile for about one mile, Donath stopped the defendant who was alone in the car. Trooper Donath asked the defendant to explain why he was driving in such an erratic manner. At this time the officer noticed the odor of alcohol and realized that the defendant was not aware that he had been driving erratically. When Donath asked to see the defendant's driver's license, the defendant responded that he did not have one because it had been revoked. Trooper Donath also observed that the defendant's speech appeared sluggish and somewhat slurred. In Donath's opinion, the defendant was not physically able to drive. Then the witness arrested the defendant for driving under the influence of intoxicating liquor.

After arresting the defendant, the trooper placed the accused in the squad car and asked the defendant whether he would be able to have the car removed or be able to make bond, because he was going to transport the defendant to jail. The defendant replied that the car belonged to his mother, that he was unable to post bond, and that he had nobody to call to get him. According to Trooper Donath, the vehicle in question was located on the shoulder of I-55, and it would have

been illegal for the car to remain parked there because parking is only allowed on a controlled-access highway, such as I-55, under emergency conditions. Donath related further that it is the policy of the Illinois State police to arrange to have all vehicles towed if a subject is arrested and to conduct an inventory search of all vehicles that are towed. Accordingly, the officer conducted an inventory search of the vehicle to ascertain what personal items were in the car.

Trooper Donath testified that he first examined the interior of the automobile, including the driver's area and the backseat and floor but excluding the area under the seats, and then checked the trunk to see if there were any tools present. He opened the trunk with the defendant's key and noticed a spare tire and a brown paper bag in the center of the trunk. The bag was not taped or stapled, and one end of the bag was open. He lifted up that end to look inside to determine the bag's contents. He observed a clear plastic bag inside the brown bag which contained a green, leafy substance that he presumed was cannabis. He prepared an inventory sheet of all the items of personal property that were inside the car. He also stated that his sole purpose in conducting the search of the trunk was for inventory purposes.

At the suppression hearing the only theory which the State advanced before the trial court was that Trooper Donath conducted a valid inventory search of the trunk of the vehicle. Subsequently, the trial court granted the defendant's motion to suppress, stating, among other things, that there was a lawful arrest for a violation of the motor vehicle law; that there was no evidence that the defendant was transporting or in possession of contraband prior to the time the trooper opened the trunk and brown paper bag; that the inventory search was pursuant to departmental policy; that the departmental policy to inventory a motor vehicle stopped on the highway was insufficient to justify an inventory search in this case; and that the contents of the brown bag were not open to view. Thereafter, the State filed a motion to reconsider, again arguing that this was a valid inventory search, which the trial court denied.

■ The State has contended in its appellate brief for the first time that the defendant lacked standing to raise the claim of a fourth amendment violation because the vehicle he was driving belonged to his mother. However, the State has waived its right to challenge the standing of the defendant, where the defendant has prevailed below on his motion to suppress, by failing to raise the argument in the trial court in either its argument on the motion to suppress or in the motion to reconsider the court's ruling on the motion to suppress. *People v. Holloway* (1981), 86 Ill. 2d 78, 91-92, 426 N.E.2d 871; *People v.*

*Chianakas* (1983), 114 Ill. App. 3d 496, 501-02, 448 N.E.2d 620.

■■ In similar fashion, the State has for the first time, without citation of authority, asserted that the search was pursuant to a lawful custodial arrest. This argument is waived by failing to raise it in the court below (*People v. Fuentes* (1980), 91 Ill. App. 3d 71, 76-77, 414 N.E.2d 876; *People v. Valdez* (1980), 81 Ill. App. 3d 25, 27-28, 400 N.E.2d 1096), and by failing to cite any authority or present a reasoned argument in compliance with Supreme Court Rule 341(e) (87 Ill. 2d R. 341(e)). We choose not to ignore the waiver rule (see *People v. Hoskins* (1984), 101 Ill. 2d 209), as our resolution of the remaining issue determines the search issue.

The State's principal argument on appeal is that the defendant having been arrested for driving while under the influence of alcohol and the vehicle he was driving having been subject to impoundment, Trooper Donath was justified in conducting an inventory search of the automobile pursuant to departmental policy. While the trial court found there was a lawful arrest of defendant and the search of the automobile was made pursuant to departmental policy, it concluded that the departmental policy to inventory a motor vehicle stopped in the interstate roadway was insufficient to justify the inventory search in this case.

On a motion to suppress evidence, the defendant has the burden of proving that the search and seizure were unlawful. (Ill. Rev. Stat. 1981, ch. 38, par. 114—12(b); *People v. Hoskins* (1984), 101 Ill. 2d 209.) A trial court's determination on a motion to suppress evidence will not be overturned unless it is found to be clearly erroneous. *People v. Clark* (1982), 92 Ill. 2d 96, 99, 440 N.E.2d 869.

The controlling decision on the validity, under the fourth amendment to the Federal Constitution, of the inventory search of an impounded vehicle is that of the Supreme Court of the United States in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092. The opinion in *Opperman* mentions three legitimate objectives for an inventory search of a car where authorities impound a vehicle and follow a routine practice of securing and inventorying the automobile's contents: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. (428 U.S. 364, 369, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3097.) In Illinois, our supreme court has followed the reasoning of *Opperman* in inventory search cases in *People v. Clark* (1976), 65 Ill. 2d 169, 357 N.E.2d 798. The inventory intrusion into a vehicle is tested for its constitutionality by an applica-

tion of the fourth amendment reasonableness standard. *People v. Bayles* (1980), 82 Ill. 2d 128, 135, 411 N.E.2d 1346; *People v. Hamilton* (1979), 74 Ill. 2d 457, 465, 386 N.E.2d 53; see generally, 2 W. LaFave, Search & Seizure sec. 7.4, at 563 (1978).

On appeal defendant appears to contend that it may be inferred that Trooper Donath opened the trunk in order to search the vehicle without probable cause. He suggests that Trooper Donath's failure to look under the seat area for articles of personal property evinces an intent to search the vehicle generally to see what he could find rather than a purpose to carefully examine the vehicle for an inventory of its contents. Defendant has not challenged the validity of the State police policy to inventory towed vehicles.

Where an inventory search is a pretext for concealing an investigatory motive, it will be deemed illegal and the evidence so found must be excluded. (*People v. Reincke* (1980), 84 Ill. App. 3d 222, 225-26, 405 N.E.2d 430; *People v. Fox* (1978), 62 Ill. App. 3d 854, 379 N.E.2d 917.) Also, the mere existence of a police regulation authorizing impoundment and search of all vehicles of arrested persons when the vehicle is not parked on the owner's property cannot be used as a predicate to determine the reasonableness of an inventory search of a vehicle. *People v. Schultz* (1981), 93 Ill. App. 3d 1071, 1075-76, 418 N.E.2d 6.

The unrebutted testimony of Trooper Donath was that it was the policy of the Illinois State police that if a subject is arrested and taken from his vehicle, the vehicle must be towed and an inventory search of the vehicle conducted. He stated that the search of the interior and trunk of defendant's vehicle was instituted solely for this purpose. He prepared an inventory sheet of the personal property found inside the vehicle. The trial court found that the inventory search was made pursuant to departmental policy. There is no hint whatever of any improper motive on the part of Trooper Donath, and we do not find the trial court's finding in this regard to be erroneous. See *People v. Clark* (1976), 65 Ill. 2d 169, 175, 357 N.E.2d 798.

Also, in determining whether an inventory search is reasonable, the threshold question is whether the prior impoundment was proper since the need and justification for the inventory arises from the impoundment. (*People v. Brown* (1981), 100 Ill. App. 3d 57, 63-64, 426 N.E.2d 575; *People v. Schultz* (1981), 93 Ill. App. 3d 1071, 1075-76, 418 N.E.2d 6.) Defendant maintains that the vehicle defendant was driving was situated on the shoulder of the controlled-access highway because it was stopped there by Trooper Donath and, furthermore, that there was no evidence that the car created a danger to traffic on

I-55.

Trooper Donath testified that the vehicle was parked on the shoulder of I-55, and it would have been illegal for the car to remain parked there because such parking is only allowed on a controlled-access highway under emergency situations. Section 11—1303(a)(1)(j) of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1303(a)(1)(j)), provides, in pertinent part, that parking of a vehicle is prohibited "[o]n any controlled-access highway." The shoulder of a highway is a part of the highway (Ill. Rev. Stat. 1981, ch. 95½, par. 1—126), and defendant's parked vehicle thus fell within the proscription of section 11—1303(a)(1)(j). The fact that defendant was directed to pull over to the side of the road by Trooper Donath and subsequently arrested for an unlawful act, which led to the vehicle remaining on the shoulder of I-55, cannot be construed as coming within the exception to the section 11—1303(a) prohibition which allows parking "in compliance with *** the directions of a police officer." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1302(a).) Furthermore, section 11—1302(c)(3) (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1302(c)(3)) authorizes any police officer to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when the person driving is arrested for an alleged offense for which the officer is required by law to take the person arrested before a "magistrate" without unnecessary delay. No one else was with defendant who could remove the vehicle from the highway, and there is no evidence that defendant could contact someone to come to the location within a reasonable time to remove the vehicle. Defendant himself could not remove the vehicle to some other proper location as he was arrested for driving while under the influence of alcohol and did not have a valid license. Under these circumstances, the impoundment pursuant to departmental policy of the vehicle defendant was driving was proper.

Finally, although we conclude the inventory is lawful, we must also examine whether the scope of the vehicle inventory was permissible. Here, the intrusion for inventory purposes extended to the locked trunk of the vehicle and to a paper bag found within the trunk in which a quantity of marijuana was found. Examining initially the question of the reasonableness of the locked trunk inventory search, we are aware of no Illinois decision on this question and the authorities in other jurisdictions are divided. (See 2 W. LaFave, Search & Seizure sec. 7.4, at 579 (1978); State v. Prober (1980), 98 Wis. 2d 345, 353 n.5, 297 N.W.2d 1, 6 n.5; Annot., 48 A.L.R.3d 37-38 (1983 Supp.).) In State v. Prober (1980), 98 Wis. 2d 345, 297 N.W.2d 1, the

Wisconsin Supreme Court, in considering the question whether a locked automobile trunk is within the permissible scope of an otherwise valid inventory search, stated:

"We are aware that legal authority is to be found both approving and disapproving trunk inventory searches, but in view of the recognized purposes served by inventory searches, we conclude that the better-reasoned cases authorize police inventory searches of locked and unlocked automobile trunks, glove compartments, and other compartments of a vehicle in which the owner might reasonably be expected to put personal effects or items of value.

To exclude these kinds of compartments from the scope of inventory searches would clearly thwart the first stated objective of protecting the property itself while it is in custody. It is a meritless argument to say that the owner of the car was satisfied with the security offered by these compartments because the storage of a vehicle at a police storage yard for an indeterminate length of time was not likely to be the sort of circumstances the owner had in mind in storing valuables in the car. Even more clearly, the second purpose for these searches, protection of the police against claims of loss, is not served if police do not inventory the entire contents of the vehicle. Police cannot reasonably be expected to defend against claims of loss, whether legitimate or false, reasonable or unreasonable, if they are not permitted to catalog what they took into custody. Moreover, a car owner inclined to make a false claim could be expected to base the claim on property missing from an area the police were not permitted to search. Finally, the third purpose, protection of the police from potential danger, can only be served by allowing police to inventory the contents of automobile trunks and other compartments. Whether the potential danger is a weapon which, if stolen, could pose a serious safety threat, explosives or even a leaking spare gasoline container threatening to ignite the vehicle, it can be averted only by permitting police to discover these before the potential harm materializes. In sum, we agree with the supreme court of New Mexico in *State v. Ruffino*, 612 P.2d 1311, 1313, 94 N.M. 500 (1980), that to forbid valid inventory searches of automobile trunks, glove compartments, and the like would effectively frustrate the fundamental purposes of such searches." 98 Wis. 2d 345, 353-55, 297 N.W.2d 1, 6-7.

Our supreme court in *People v. Clark* (1976), 65 Ill. 2d 169, 357

N.E.2d 798, held that an inventory search of the unlocked glove compartment of the defendant's vehicle was a reasonable one. The circumstance that the defendant was present so that the arresting officer could have requested his consent does not satisfy the objectives for an inventory search of the car. (65 Ill. 2d 169, 174, 357 N.E.2d 798.) Although there is authority that sealing the trunk is a better alternative, it is unlikely that the United States Supreme Court would impose a sealing of the trunk requirement upon the police as a constitutional matter. (2 W. LaFave, Search & Seizure sec. 7.4, at 222-23 (1984 Supp.).) The situation here is not one where the trunk is forced open. (See *Martinez v. State* (Tex. App. 1982), 644 S.W.2d 104, 110.) On balance, we are persuaded by the reasoning, set forth above, of the Wisconsin Supreme Court in *State v. Prober*, and conclude that the entry by use of defendant's key into the impounded vehicle he was driving for the purpose of an inventory of its contents pursuant to departmental policy was not unreasonable.

■ Once the trunk was opened, Trooper Donath observed a paper bag, in which a plastic bag containing marijuana was found. While there is some dispute in the record whether the paper bag was open at one end or closed, we do not regard that fact as determinative in view of the recent decision of *Illinois v. LaFayette* (1983), 462 U.S. 640, 77 L. Ed. 2d 65, 103 S. Ct. 2605. In *LaFayette*, the Supreme Court held that it was not unreasonable for police, as part of the routine procedure incident to incarcerating an arrested person at the station house, to search any container or article in his possession, in accordance with established inventory procedures. (462 U.S. 640, 648, 77 L. Ed. 2d 65, 73, 103 S. Ct. 2605, 2611.) While the defendant argues that *LaFayette* is limited in its scope to containers found on an arrested person searched at the station house, Professor LaFave states that the Supreme Court would reach the same conclusion as to containers within inventoried vehicles. (2 W. LaFave, Search & Seizure sec. 7.4, at 223 (1984 Supp.).) We note that in *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346, our supreme court held that the procedure of inventorying the contents of a suitcase found in a lawfully impounded vehicle was, in the absence of exigent circumstances, unreasonable. (See also *People v. Velleff* (1981), 94 Ill. App. 3d 820, 419 N.E.2d 89.) The court, however, expressly observed that the United States Supreme Court had not yet ruled on whether inventories of closed containers can be reconciled with the fourth amendment guarantee. (*People v. Bayles* (1980), 82 Ill. 2d 128, 135, 411 N.E.2d 1346.) We believe the recent ruling in *LaFayette* now calls into question the result reached in *Bayles*, and, in particular, compels

an opposite result under the facts here. Defendant has not contended that the State police policy to inventory the contents of the trunk was not a routine procedure. Accordingly, on this record we find the search of the trunk and its contents reasonable.

For the foregoing reasons, we conclude that the trial court's granting of the motion to suppress evidence was clearly erroneous, and we reverse that judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

VAN DEUSEN and HOPF, JJ., concur.