THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JOSEPH URSINI, Defendant-Appellee.

Second District    No. 2—92—0633

Opinion filed May 26, 1993.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Anthony F. Mannina, of Wheaton, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

The State appeals the order of the circuit court suppressing evidence the State secured against defendant, Joseph Ursini. While the State does not contest the trial court's finding that the search of defendant's car was unreasonable, the State argues that the evidence would have been inevitably discovered during the subsequent inventory search. We affirm.

Defendant was arrested on October 14, 1991, and charged with possessing lysergic acid diethylamide (LSD) with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(7)), driving with a suspended license, and driving with a defective taillight (Ill. Rev. Stat. 1991, ch. 95½, pars. 6—303(a), 12—201(b)). He brought a motion to suppress the evidence discovered when the police searched his car.

Defendant, who lived in West Chicago, testified that he was driving north on Highway 59 in Du Page County when he saw flashing lights behind him. Officer Bernard Keegan of the Naperville police department stopped the car because a taillight was not working. Defendant pulled his car off the road and onto the shoulder. He left his keys in the ignition and walked towards the officer. The officer had checked the status of the driver's license of the registered owner of the car and determined that the owner's driver's license had been

suspended. When the officer told defendant that fact, defendant protested that he had corrected the suspension in court. Defendant testified he pulled his license out of his wallet, which was in his coat's breast pocket. Officer Keegan testified contrarily that defendant returned to the car and fished along the front seat to find his license. As defendant searched, Keegan saw a glass pipe by the armrest in the center of the front seat; the pipe was of the kind often used to smoke marijuana. Officer Bill Davis then entered the passenger compartment and seized the pipe. Keegan arrested defendant, and other officers searched the backseat and trunk. They found a cardboard and foil tube in the backseat and a pharmaceutically folded piece of paper in the trunk. They also performed an inventory search.

The trial court determined that defendant's story that the driver's license was in his wallet on his person was more credible than the officer's account that the license was in the car. Thus, the officer had no authority to be in the car or to find the pipe, even if the sight of the pipe alone could create probable cause to suspect the presence of contraband. The officers then did not have probable cause to search the trunk where the LSD paper was found, and the trial court granted defendant's motion to suppress the evidence.

The prosecutor argued in the alternative that the evidence would have been inevitably discovered when the officers performed the inventory of the contents of the car. Officer Keegan testified that he was familiar with the policy of the Naperville police department for towing vehicles. He orally related that the policy was "vehicles that are involved in an arrest situation are towed by department policy as opposed to leaving them unsecured." He also stated there were limited exceptions, such as when the owner gave permission for a licensed passenger to drive the car; however, defendant was alone that evening. Keegan completed an inventory form, which was a checklist of various compartments of a car, of ordinary items that could be found in cars, and of the condition of the various parts of the car. The car was towed by a private company to a private service station. The checklist included the spaces under the hood and trunk of the car. We note here the State has not objected to defendant's supplementation of the record with the trial exhibit of the checklist even though defendant has not requested leave of court to do so; the State relies on the exhibit for its statement of facts.

Keegan specifically testified that the purpose of entering the trunk was to search for additional contraband. At that point, the officers were not conducting the inventory search. However, Keegan denied that the items were removed before he made a decision to tow

the vehicle. Keegan admitted that defendant's car was completely off the road. Keegan stated that defendant was "basically under arrest" once the officers determined that the registered owner of the car was operating the vehicle, although they never told him he was under arrest until they found the pipe. They did not ask defendant's permission to search the car. The officers did not know if the arrest occurred in Naperville, Warrenville, or unincorporated Du Page County.

When the prosecutor asked for a ruling on the inventory search, the trial court stated that it did not believe that a proper inventory search could relate back to cure an unreasonable search. The court stated that, with respect to a previous unlawful search, the inventory could not legitimize the search as a matter of law. The State appeals.

■ The inevitable discovery doctrine is an exception to the exclusionary rule, which prohibits illegally seized evidence from being used at a criminal trial. (*People v. Edwards* (1991), 144 Ill. 2d 108, 143.) Evidence seized in violation of a constitutional right may be admitted if the prosecution is able to show that the police would have inevitably discovered the evidence without reference to the police misconduct. *Nix v. Williams* (1984), 467 U.S. 431, 448, 81 L. Ed. 2d 377, 390, 104 S. Ct. 2501, 2511; *Edwards*, 144 Ill. 2d at 142; *People v. Zurawski* (1992), 234 Ill. App. 3d 418, 427.

To prevail on the inevitable discovery doctrine, the State must show that the inventory search which occurred immediately after the search for contraband was proper by itself and that the officers intended on removing the car based on the traffic violation alone prior to the discovery of the alleged contraband.

■ In determining whether an inventory search is proper and reasonable, the threshold question is whether the prior impoundment was proper since the need and justification for the inventory arises from the impoundment. (*People v. Schultz* (1981), 93 Ill. App. 3d 1071, 1075.) It is beyond challenge that the police have authority to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 369, 49 L. Ed. 2d 1000, 1005, 96 S. Ct. 3092, 3097; *Schultz*, 93 Ill. App. 3d at 1076.) This authority arises from the police department's "community caretaking functions." (*Opperman*, 428 U.S. at 368, 49 L. Ed. 2d at 1005, 96 S. Ct. at 3097.) The fact that the arrestee's car would be left unattended is *not* a sufficient reason for impoundment (*Schultz*, 93 Ill. App. 3d at 1076), unless the vehicle would be illegally parked. *Opperman*, 428 U.S. at 369, 49 L. Ed. 2d at 1005, 96 S. Ct. at 3097; see *People v. Braasch* (1984), 122 Ill. App. 3d 747, 753.

■ The reasons for conducting an inventory search are threefold: (1) the protection of the vehicle owner's property which may be inside the vehicle; (2) the protection of the police against unfounded claims by the owner that items have been stolen from the vehicle during the time the car was impounded; and (3) the protection of the police from potential danger. (*Illinois v. Lafayette* (1983), 462 U.S. 640, 646, 77 L. Ed. 2d 65, 71, 103 S. Ct. 2605, 2609; *Opperman*, 428 U.S. at 369, 49 L. Ed. 2d at 1005, 96 S. Ct. at 3097; *People v. Clark* (1976), 65 Ill. 2d 169, 174; *Braasch*, 122 Ill. App. 3d at 751.) For a customary inventory search to be deemed reasonable, it must further these three objectives. (*People v. Bayles* (1980), 82 Ill. 2d 128, 140-41.) While the reasonableness of any particular governmental activity does not necessarily depend on the existence of less intrusive alternative means (*Lafayette*, 462 U.S. at 647, 77 L. Ed. 2d at 71-72, 103 S. Ct. at 2610), as long as the police regulations relating to inventory procedures are reasonable and administered in good faith, the search satisfies the fourth amendment even though courts might, as a matter of hindsight, be able to devise equally reasonable rules requiring a different procedure (*Colorado v. Bertine* (1987), 479 U.S. 367, 374, 93 L. Ed. 2d 739, 747, 107 S. Ct. 738, 742).

The United States Supreme Court emphasized that inventories must be conducted pursuant to standardized criteria. (*Bertine*, 479 U.S. at 374, 93 L. Ed. 2d at 747, 107 S. Ct. at 742.) A protective search must be conducted in accordance with standardized procedures to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function. (*Opperman*, 428 U.S. at 375, 49 L. Ed. 2d at 1008, 96 S. Ct. at 3100; *People v. Ocon* (1991), 221 Ill. App. 3d 311, 313.) However, the mere existence of a police regulation to inventory all towed vehicles or to authorize the search of all vehicles of arrested persons when the vehicle is not parked on the owner's property will not conclusively make an inventory search reasonable. *Braasch*, 122 Ill. App. 3d at 752; *People v. Wetherbe* (1984), 122 Ill. App. 3d 654, 659.

While Illinois' courts have found some inventory searches unreasonable because less intrusive means existed, the rulings occurred where there was actual proof that less intrusive means did exist or where the police had no responsibility for the car or its contents. Compare *People v. Velleff* (1981), 94 Ill. App. 3d 820, 823 (no showing that the defendant consented to the police taking custody or that companion could not have driven vehicle); *People v. Valdez* (1980), 81 Ill. App. 3d 25, 29 (since car was legally parked in motel parking lot, police had no grounds to move it); *People v. Fox* (1978), 62 Ill. App. 3d

854, 856 (passenger could have moved vehicle); *People v. Brown* (1981), 100 Ill. App. 3d 57, 64 (police had no responsibility over vehicle because it was legally parked on street), with *Braasch*, 122 Ill. App. 3d at 754 (no evidence that the defendant could contact someone to come to the location within a reasonable time to move the vehicle), and *People v. Ruffolo* (1978), 64 Ill. App. 3d 151, 158 (the defendant was not the owner of car and true owner could not be contacted). See also 3 W. LaFave, Search & Seizure §7.3(c), at 89-91 (2d ed. 1987).

Defendant contends that the inventory was a sham to cover the previous unreasonable search (see *Wetherbe*, 122 Ill. App. 3d at 659; *People v. Reincke* (1980), 84 Ill. App. 3d 222, 225), that the police did not have the right to do an inventory because they did not have custody of the car as it was privately towed, and that the scope of the search and the authority to order a tow exceeded the provisions of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1991, ch. 95½, pars. 4—204, 4—203).

In this cause, the State had the burden of proving that its warrantless search of defendant's car was reasonable. (*People v. Spann* (1992), 237 Ill. App. 3d 705, 708.) In reviewing a trial court's motion to suppress evidence, the court's findings will not be disturbed unless they are manifestly erroneous, but where neither the facts nor the credibility of the witnesses is in dispute, the question is a legal one subject to *de novo* review. (*People v. Froio* (1990), 198 Ill. App. 3d 116, 120.) Here, we accept the trial court's determination that defendant was a more credible witness than the officers. However, we may review the trial court's application of the law to the facts under *de novo* review. The State notes that the trial court did not rule that the inventory was a sham or make any ruling on the validity of the inventory search.

■ We do not believe the State met its burden of proving the reasonableness of the inventory search. The State presented no evidence of the inventory/search policy other than the rendition by Officer Keegan, whom the trial court did not find credible. Keegan directly admitted that the reason the officers searched the trunk was to look for contraband, although he claimed that the decision to do an inventory was formed before the discovery of the pipe. This claim is not credible because the officer claimed that he did not decide to arrest defendant until the officer ascertained the driver's identity, which Keegan stated did not occur until defendant showed his license, which Keegan said was on the front seat with the pipe. The police could not tow the car unless the sole driver was arrested. Thus, Keegan's reci-

tation of the Naperville policy is less credible even if the alleged terms of the policy are reasonable.

Defendant argues that the police were not authorized to inventory the car because they never had custody of it. The police had a private tow truck take the car to a private lot. One purpose of an inventory is to protect the police against claims of lost or stolen property while the car is in their custody. (*Opperman*, 428 U.S. at 369, 49 L. Ed. 2d at 1005, 96 S. Ct. at 3097; *Wetherbe*, 122 Ill. App. 3d at 659.) Since the police did not take custody of the car, defendant argues the rationale for allowing the warrantless search is missing.

Defendant also argues that if the police do authorize the removal of a car, the Illinois Vehicle Code permits them only to record the color, year, manufacturer, model, style, vehicle identification number, license plate information, date, time, location and reason for the tow. (Ill. Rev. Stat. 1991, ch. 95½, par. 4—204.) The Code does not authorize a search of the car's interior. Defendant also argues that when a vehicle is abandoned or left unattended, it may be removed by a towing service only when it was been left for 10 hours in an urban district or 24 hours outside an urban district. (Ill. Rev. Stat. 1991, ch. 95½, pars. 4—203(b), (c).) The State did not argue that the shoulder of Highway 59 is an expressway where parking is prohibited. (See Ill. Rev. Stat. 1991, ch. 95½, par. 11—1303; *Braasch*, 122 Ill. App. 3d at 753.) Both defendant and Keegan testified that the car was completely off the road, and neither witness said the car was an obstruction to traffic or the car was in danger of being vandalized. The State has not replied to the defendant's arguments that the inventory was not authorized because of lack of custody, because of exceeding the scope of section 4—204, or because the car was not left unattended the requisite time.

In *People v. Alewelt* (1991), 217 Ill. App. 3d 578, 581, the court determined that the police officer who conducted the inventory was not a credible witness and had made a pretextual search for contraband. *Alewelt* noted that the officer did not follow the directives of the Vehicle Code by waiting two hours before authorizing the tow for the car left on the interstate highway. However, we do not read *Alewelt* as ruling that the officer's actions violated section 4—203; rather, the discussion appears in the section of the opinion concerning his credibility. In *Braasch*, this court noted that section 11—1302(c)(3) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—1302(c)(3)) authorized the removal of a car in some circumstances when the driver is arrested. (See *Braasch*, 122 Ill. App. 3d at 753.) Thus, we consider any alleged viola-

tion of waiting periods of section 4—203 merely to reflect on Officer Keegan's credibility.

Based on the above analysis, we do not believe the State satisfied its burden of proving that the police officers would have authorized the tow of the car based solely on defendant's failure to have a valid license and without reference to the illegal search of the car. The State did not prove it was reasonable to inventory a car which it did not take into its custody, was not in danger, and was not obstructing traffic. Thus, the State did not prove that the officers would have inevitably found the LSD paper in the trunk had they not illegally entered it.

Because the State cannot prevail on its argument that the inventory search was reasonable, we need not decide whether an inventory search can be used under the inevitable discovery doctrine. While a search made on a pretext need not be suppressed if the search is objectively reasonable (*Ocon*, 221 Ill. App. 3d at 314), we do not decide that the inevitable discovery rule could apply to inventory searches. Because the State has not met its burden of establishing the reasonableness of the search anyway, we do not need to reach the question.

For the above reasons, the order of the circuit court is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.