FOURTH DIVISION
Filed: 3-24-11

No. 1-08-0973

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit |
| | ) | Court of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 06 CR 3036 |
| v. | ) | |
| | ) | |
| MICHAEL SPENCER, | ) | Honorable |
| | ) | John J. Scotillo, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE GALLAGHER delivered the judgment of the court, with opinion. Justices Lavin and Pucinski concurred in the judgment and opinion.

## OPINION

Following a jury trial, defendant Michael Spencer was found guilty of possession of a controlled substance with intent to deliver and sentenced to 15 years' imprisonment. On appeal, defendant contends that the search of his car violated his fourth amendment right to be free from unreasonable searches and seizures and that the trial court failed to question prospective jurors in compliance with Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 2007)). We reverse.

## BACKGROUND

Prior to trial, defendant filed a motion to quash his arrest and suppress illegally obtained evidence. At the hearing on defendant's motion, Rolling Meadows police detective Joe Pistorius testified that he and Investigator Mark Hinds went to defendant's residence on January 4, 2006, to place him under arrest for pandering in connection with an investigation he had conducted

regarding a missing person. About 9 p.m. that evening, Detective Pistorius observed a tan BMW exit from defendant's garage, and the officers followed that vehicle for two minutes as Detective Pistorius determined that the vehicle was registered to defendant and that the driver looked like defendant. Detective Pistorius activated his vehicle's emergency lights, and defendant exited the roadway and pulled into a "private property parking lot." The officers exited their vehicle, and Detective Pistorius informed defendant, who had already exited his vehicle, that he was under arrest for pandering. A marked squad car arrived about five minutes later, and defendant was subjected to a pat down search, which revealed that he was in possession of $8,000, and he was then transported to the police station by Officer Ryan McMahon.

After defendant had been removed from the scene, Detective Pistorius, Investigator Hinds, and Investigator Cook conducted a custodial inventory search of defendant's vehicle. During the search, the officers discovered a metal lock box in the trunk of the car, and Detective Pistorius opened it with a key from defendant's key chain. The lock box contained several bundles of $100 bills and a clear, plastic bag holding a white, powdery substance that was later determined to be cocaine.

Detective Pistorius explained that he had been trained to consider whether an inventory search was necessary to log the owner's personal property, to make sure that there are no claims against the police department regarding stolen property, and to make sure that there are not any dangerous or hazardous materials in the vehicle when deciding whether to conduct such a search and that he believed all three elements were present in this case. Detective Pistorius explained that at the time the search was conducted, defendant's car was not impeding traffic and defendant had not been given the opportunity to have someone take his vehicle home.

-2-

On cross-examination, Detective Pistorius stated that defendant had pulled into the parking lot at Fremd High School, which was private property, and that police procedure required that the vehicle be towed. He also stated that it was the policy of the Rolling Meadows police department (RMPD) to tow a vehicle when the lone occupant had been arrested or taken from the scene and to conduct a custodial inventory of the vehicle before it was towed. The inventory was to include the inspection of closed containers that might contain valuable items, which would then be placed into storage. Valuables were defined as any loose items that could be easily removed from the vehicle and posed a high risk of loss through damage or theft. Since defendant had been found to have been in possession of $8,000, Detective Pistorius wanted to verify whether there were other items of value in his vehicle and opened the lock box that had been recovered from the trunk and inventoried the items found therein.

Detective Pistorius further stated that the RMPD field training manual directed that an officer was to list inventoried property and note the condition of the vehicle on a tow slip and to place any valuable items in storage with a receipt. The manual also provided that closed containers were to be inspected in an attempt to save perishable items and to notify the proper authorities of dangerous materials. Detective Pistorius prepared a tow slip for defendant's vehicle, which indicated that tools, a speaker box, gloves, a scarf, and an inflatable mattress had been recovered from his car and listed other items, including a cell phone, a computer, and a lock box containing money and cocaine, on a separate sheet because they had been inventoried separately.

On redirect examination, Detective Pistorius testified that defendant's car was towed

because he had been arrested and that anytime an individual was arrested, that person's vehicle was to be towed. The trial court then asked Detective Pistorius what the police department's policy was regarding when to tow a vehicle, and he responded that "[a]fter an individual has been arrested we tow the vehicle to an impound." Detective Pistorius subsequently stated on re-cross-examination that the towing procedure differed depending on the crime for which the individual had been arrested and on whether there was another person in the vehicle at the time of arrest. He explained that if another occupant of the vehicle at the time of the arrest is determined to have a valid driver's license and the vehicle is not part of a crime scene or a stolen vehicle, then the car is to be turned over to that person, and it will not be towed. The tow-in report Detective Pistorius prepared of defendant's vehicle and a portion of the RMPD procedural manual pertaining to the towing of vehicles were subsequently entered into evidence.

Following argument, the trial court denied defendant's motion, finding that the search of his vehicle was a proper inventory search conducted pursuant to RMPD procedures. In doing so, the court stated that it was necessary to tow defendant's vehicle because he was alone when he was arrested, his car was parked in a high school parking lot, and he was being transported away from the vehicle. The court also stated that Detective Pistorius was required by department procedures to conduct an inventory search of defendant's vehicle to safeguard his property and that Detective Pistorius's decision to open the lock box to search for valuables made sense.

Defendant subsequently elected to proceed *pro se* and filed a motion to suppress illegally obtained evidence and a motion to reconsider the denial of his previous motion to quash his arrest and suppress illegally obtained evidence. In those motions, defendant alleged that the police

illegally seized and searched his lawfully parked vehicle without a warrant and asserted that the impoundment of his car was not lawful because it was not conducted in accordance with the procedures set forth in the police department procedural manual.

Detective Pistorius testified at the hearing on defendant's *pro se* motions, and his testimony regarding the events leading up to, including, and following defendant's arrest was consistent with the testimony he had provided at the first hearing. Detective Pistorius also testified that defendant's car was towed to Pellow's Auto/Body when it was impounded, that he did not recall seeing any signs posted at the entrance of the high school parking lot which indicated that parking was forbidden or that unauthorized vehicles would be towed, and that he was not instructed to tow defendant's car by an employee of the high school. Detective Pistorius believed that the parking lot was private property because it was owned by School District 211 and that RMPD policy directed that the vehicle of an arrested person shall be towed subsequent to the arrest when it is located on private property, subject to a couple of exceptions that did not apply in this case. He acknowledged, however, that the written RMPD procedural manual did not specifically state that the police shall tow the vehicle of an arrested person from private property. Detective Pistorius further testified that defendant's vehicle was illegally parked at the time of his arrest.

The entire portion of the RMPD procedural manual regarding towing and impounding vehicles was then entered into evidence and the parties delivered their closing arguments, after which the trial court denied defendant's motions. In doing so, the court stated that Detective Pistorius's search of defendant's car was a legal search incident to arrest and that he properly

towed defendant's vehicle and conducted an inventory search of it pursuant to police procedures.

The court appointed counsel for defendant upon his request, and the case proceeded to a jury trial on the charge of possession of a controlled substance with intent to deliver. Following trial, defendant was found guilty of that crime and sentenced to 15 years' imprisonment.

ANALYSIS

I. Jurisdiction

The State initially asserts that this court lacks jurisdiction to review defendant's appeal because his notice of appeal was untimely. A defendant must file his notice of appeal within 30 days of the entry of the final judgment from which he is appealing or, if a motion directed against the judgment is timely filed, within 30 days of the entry of the order disposing of that motion. Ill. S. Ct. R. 606(b) (eff. Sept. 1, 2006). Upon sentencing a defendant, the trial court is required to advise him that he has 30 days from the date of sentencing to file a written motion asking the court to reconsider the sentence imposed. Ill. S. Ct. R. 605(a)(3)(B) (eff. Oct. 1, 2001).

The State maintains that defendant was sentenced and properly admonished of his right to file a motion to reconsider his sentence on January 25, 2008, and that his motion to reconsider was untimely because it was filed on March 31, 2008, 67 days after he was sentenced. The State reasons that since defendant did not file a timely motion to reconsider his sentence, he was then required to file his notice of appeal within 30 days of sentencing, and that his notice of appeal was therefore untimely because it was filed on April 10, 2008, well more than 30 days after he was sentenced. Defendant replies that his motion to reconsider his sentence was timely filed on February 19, 2008, and that his notice of appeal was also timely filed because it was filed on the

same day he withdrew his motion to reconsider.

The common law record shows that defendant was sentenced on January 25, 2008, and that he subsequently filed two motions to reconsider his sentence. The first motion to reconsider does not have a filing date stamped on it and is accompanied by a notice of the motion, which includes a proof of service, signed by Kathy Pepper, a nonattorney, certifying that a copy of the motion "was presented to the Clerk of the Circuit Court and State's Attorney's Office" in Rolling Meadows on February 19, 2008. It appears that a filing date had been stamped on the notice of the motion, and a close inspection of the copy of the document in the common law record reveals a faint remnant of a stamped date of February 19, 2008. The second motion to reconsider does not have a filing date stamped on it either, and is accompanied by a notice of the motion that has a stamp indicating that it was filed on March 31, 2008, and a signed proof of service by Pepper, certifying that the motion was presented on that date. In his reply brief, defendant, citing an affidavit signed by Anna Gregoline that is attached to the appendix of his reply brief, asserts that the clerk of the circuit court maintained that the original copy of the first notice of the motion to reconsider showed a file-stamp of February 19, 2008, and affixed a new, clearly legible stamp on a copy of the notice of the motion that was then included in a supplement to the common law record that reflects it was filed on February 19, 2008.

Although we cannot consider the affidavit signed by Gregoline because it was merely attached to the appendix of defendant's reply brief, and not included in the record (*Jones v. Police Board*, 297 Ill. App. 3d 922, 930 (1998)), the copy of the notice of the motion to reconsider defendant's sentence included in the common law record, which contains a faint, but legible, file-

stamp of February 19, 2008, and a signed proof of service certifying that it was filed on that date, is sufficient to convince this court that defendant's motion to reconsider was timely filed on February 19, 2008. The record shows that defendant's motion to reconsider his sentence was not ruled upon prior to April 10, 2008, when he withdrew that motion and filed his notice of appeal, and we thus conclude that his notice of appeal was timely filed (Ill. S. Ct. R. 606(b) (eff. Sept. 1, 2006)) and that we therefore have jurisdiction to review his appeal.

## II. Motions to Suppress

Defendant contends that the trial court erred by denying his motions to suppress illegally obtained evidence because the warrantless search of his vehicle was not a valid search incident to arrest or a valid inventory search. The defendant bears the burden of proof at a hearing on a motion to suppress, but if the defendant is able to make a *prima facie* case that the evidence at issue was obtained by an illegal search or seizure, which may be done by showing that the search was conducted without a warrant, the State will then have the burden of going forward with evidence to counter the defendant's claim. *People v. Gipson*, 203 Ill. 2d 298, 306-07 (2003). When reviewing a trial court's ruling on a motion to suppress, we accept the court's findings of fact unless they are against the manifest weight of the evidence, but review its ultimate ruling as to whether suppression is warranted *de novo*. *People v. Harris*, 228 Ill. 2d 222, 230 (2008).

The United States and Illinois Constitutions guarantee citizens the right to be free from unreasonable searches and seizures. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, §6. Searches conducted without a warrant are *per se* unreasonable under the fourth amendment subject to a few specifically established exceptions, including the exceptions for a search incident

1-08-0973

to a lawful arrest (*Arizona v. Gant*, ___ U.S. ___, ___, 129 S. Ct. 1710, 1716 (2009)) and an inventory search (*Illinois v. Lafayette*, 462 U.S. 640, 643 (1983)).

## A. Search incident to arrest

Defendant first asserts that the search of his vehicle cannot be justified as a search incident to a lawful arrest because it was conducted after he had been arrested and while he was being transported to the police station in a police car. Although the trial court indicated in its denial of defendant's second motion to suppress that the search of his car was a valid search incident to arrest, the State did not rely on that justification at the hearings on the motions to suppress and does not now assert that justification on appeal. As such, we need not determine whether the search fo defendant's car was a valid search incident to arrest.

## B. Inventory search

Defendant next asserts that the search of his vehicle did not meet the necessary criteria of a valid inventory search. "An inventory search is a judicially created exception to the warrant requirement of the fourth amendment." *People v. Hundley*, 156 Ill. 2d 135, 138 (1993). In order to qualify as a valid inventory search, three requirements must be satisfied: (1) the impoundment of the vehicle must be lawful; (2) the purpose of the search must be to protect the owner's property and to protect the police from claims of lost, stolen, or vandalized property and to guard the police from danger; and (3) the search must be conducted in good faith pursuant to reasonable standardized police procedures and not as a pretext for an investigatory search. *Id.* An inventory search will satisfy the requirements of the fourth amendment if it is conducted pursuant to reasonable police regulations and administered in good faith. *People v. Clark*, 394 Ill. App. 3d

344, 348 (2009). The threshold question in determining whether the search of an individual's vehicle qualifies as a valid inventory search is whether the prior impoundment was proper, since the need and justification for the inventory arise from the impoundment. *Id.*

The State asserts that the impoundment of defendant's vehicle was proper because it complied with RMPD procedures. Section VI(A) of the RMPD procedural manual provides that subsequent to an arrest, a vehicle may be left at the scene if the arrest occurred "[i]n the private driveway or residential parking lot of the arrestee" or "[i]n parking lots that are open to the public (i.e. shopping center lots, motel/hotel lots, and office complex lots), and with the permission of a shift supervisor and the vehicle owner." Section VI(B) of the RMPD manual provides that the vehicle shall be towed "[i]n cases involving a custodial arrest on a public roadway where the vehicle cannot be legally parked and where there is no other licensed driver to take immediate control of the vehicle."

The maxim *expressio unius est exclusio alterius* is an aid of statutory construction that means "the expression of one thing is the exclusion of another." (Internal quotation marks omitted.) *Metzger v. DaRosa*, 209 Ill. 2d 30, 44 (2004). This maxim is based in logic and common sense and dictates that where a statute or regulation lists the things to which it refers, it may be inferred that all omissions therefrom should be understood as exclusions. *Id.*

In this case, the RMPD specifically listed two situations in which a vehicle may be left at the scene of an arrest in section VI(A) of the procedural manual. As such, we infer from the RMPD's listing of those two situations that it intended to exclude all other situations from the set of circumstances in which an officer may leave a vehicle at the scene of an arrest and note that our

inference is consistent with the testimony of Detective Pistorius and the interpretation of the RMPD's policy by the trial court. Thus, since defendant was not arrested in his private driveway or residential parking lot and Detective Pistorius did not receive the permission of his shift supervisor or defendant to leave the vehicle in the parking lot, we determine that neither of the exceptions to the towing requirement set forth in section VI(A) apply in this case and that Detective Pistorius did not violate RMPD procedures by impounding defendant's vehicle following his arrest.

"However, the existence of a police regulation cannot be used as a predicate to determine the lawfulness or reasonableness of an inventory search of a vehicle." *People v. Schultz*, 93 Ill. App. 3d 1071, 1076 (1981). To hold otherwise would grant the police an unlimited ability to evade the requirements of the fourth amendment by promulgating regulations that authorize the use of inventory searches following every arrest. *Id.* Thus, Detective Pistorius's impoundment of defendant's vehicle is not rendered lawful merely by the fact that he was following RMPD procedures when he did so.

The State asserts that defendant's car was properly impounded because it was located on public property, defendant was the lone occupant at the time of the arrest, and it was not legally parked. Defendant maintains, however, that the Fremd High School parking lot was private property and that the State has waived its claim to the contrary by arguing that it was private property at the hearings on the motions to suppress, and thus cannot now raise the argument that it was public property for the first time on appeal.

The record shows that the State argued at the hearings on both motions to suppress that

Detective Pistorius properly followed police procedure when he ordered that defendant's car be towed. Although the State did not specifically assert that the parking lot was public property and once asserted during the first hearing that the lot was private property, the State's argument that Detective Pistorius was following police procedures when he towed defendant's car is largely consistent with its argument on appeal. As such, it would not serve the purposes of the forfeiture rule to apply it in this case, and we therefore decline to do so. See *People v. Galan*, 229 Ill. 2d 484, 499 (2008) (declining to apply forfeiture to the State's arguments where they were raised in the trial court, even though they were not fully developed at that time).

Defendant further maintains that the evidence presented at the suppression hearings establishes that the Fremd parking lot was private property and that the police did not have the authority to tow his vehicle because his car was legally parked therein. The police have the authority to seize and remove vehicles that are impeding traffic or threatening public safety and convenience. *Clark*, 394 Ill. App. 3d at 348. However, the mere fact that an arrestee's car would be left unattended is insufficient to justify impoundment unless the vehicle would be illegally parked. *People v. Ursini*, 245 Ill. App. 3d 480, 483 (1993).

The record shows that Detective Pistorius testified at the first hearing that defendant pulled into a "private property parking lot" after Detective Pistorius had activated his vehicle's emergency lights and that the vehicle was not impeding traffic when it was searched and towed, and stated on cross-examination that the parking lot was private property. At the second hearing, Detective Pistorius explained that he believed that the Fremd parking lot was private property because it was owned by School District 211. He also testified that he was not instructed to tow

defendant's vehicle by a Fremd employee and that he did not recall seeing any signs at the entrance of the parking lot that indicated that parking was forbidden and unauthorized vehicles would be towed, but that defendant's vehicle was illegally parked at the time of his arrest. In denying defendant's motions to suppress, the trial court did not make a finding as to whether the lot was public or private property or whether defendant's vehicle was legally parked, but instead stated that the vehicle "obviously" could not have been left in the lot and that the inventory search was properly conducted pursuant to RMPD procedures.

In its appellee's brief, the State asks this court to take judicial notice of the fact that Fremd High School is public property and that its parking lot is not open to the public and is reserved for registered parking by students and faculty. In doing so, the State directs our attention to a profile of School District 211 and the 2010-11 registration form for Fremd High School taken from the District 211 Web site and included in the appendix to its brief.

A reviewing court may take judicial notice of factual evidence when the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy. *People v. Mann*, 341 Ill. App. 3d 832, 835 (2003). While we do take judicial notice of the fact that Fremd is a public school operated by School District 211 and that its parking lot is therefore public property, we do not take judicial notice of the alleged facts that the lot was not open to the public and was reserved for registered parking by students and faculty at the time defendant was arrested. The Fremd registration form is for the 2010-11 school year and, thus, does not show what the parking policies were on January 4, 2006, when defendant was arrested, and merely indicates that student parking is restricted to the spaces reserved for that purpose, and

not that the entire lot is reserved for faculty and students or that no portion of the parking lot is reserved for or available to members of the public.

We determine that the evidence presented at the suppression hearings does not establish that the impoundment of defendant's vehicle was lawful. Although Detective Pistorius testified that defendant's car was not legally parked at the time he was arrested, he did not provide the reason it was not legally parked. The State did not present any evidence showing that defendant was prohibited from parking in the lot, and Detective Pistorius testified that he did not recall seeing any signs indicating that parking was forbidden or that unauthorized vehicles would be towed. Also, the State did not present any evidence showing that defendant's vehicle was impeding traffic or threatening public safety (*Clark*, 394 Ill. App. 3d at 349), and Detective Pistorius testified that it was not impeding traffic when defendant was arrested. While the State asserts in its brief that Detective Pistorius would have potentially put schoolchildren at risk by leaving the vehicle in the parking lot, it does not explain, nor can we see, how the car's presence in the lot would have endangered any of the school's students. In addition, the State did not present any evidence showing that defendant consented to the impoundment of his vehicle or that an employee or representative of Fremd High School requested that it be towed. *Schultz*, 93 Ill. App. 3d at 1076. Furthermore, Detective Pistorius testified that the car was impounded pursuant to RMPD policy that an arrested person's vehicle shall be towed, and not because it was illegally parked.

Thus, the record shows that defendant made a *prima facie* case that the evidence that was taken from the lock box in the trunk of his car was obtained during an illegal search by showing

that the search was conducted without a warrant. *Gipson*, 203 Ill. 2d at 306-07. The State was then required to come forward with evidence rebutting that claim and showing that the evidence was collected during a legal inventory search. *Id.* at 307. The mere fact that defendant's vehicle would have been left unattended is insufficient to justify its impoundment. *Ursini*, 245 Ill. App. 3d at 483. In this case, the State did not present sufficient evidence to show that the threshold requirement of a legal inventory search, that the impoundment of defendant's vehicle was lawful, was met (*Clark*, 394 Ill. App. 3d at 348-49), and we therefore determine that the warrantless search of defendant's vehicle cannot be justified as an inventory search.

The State further asserts that the exclusionary rule should not be applied in this case because the evidence suggests that the police acted reasonably and in good faith. In doing so, the State cites to *People v. Galan*, 229 Ill. 2d at 520, 523, in which the Chicago police failed to comply with the magistrate provision of Indiana's fresh pursuit statute and our supreme court chose not to apply the exclusionary rule. In doing so, the court determined that the police did not violate the defendant's constitutional rights and that excluding the challenged evidence would have a minimal deterrent effect on future police misconduct where the officers were not even aware that they were in Indiana at the time. *Id.* at 522-23. In this case, however, the search of defendant's car violated his fourth amendment right to be free from unreasonable searches and seizures and the exclusion of the challenged evidence has a deterrent effect where the improper search at issue was made pursuant to the procedures set forth in the RMPD manual.

We thus conclude that the trial court should have granted defendant's motions to suppress and excluded the cocaine that was discovered in the lock box in the trunk of his car. Since the

1-08-0973

State would be unable to prove beyond a reasonable doubt that defendant unlawfully possessed a controlled substance with the intent to deliver without the suppressed cocaine, we reverse outright his conviction and sentence. *People v. Kipfer*, 356 Ill. App. 3d 132, 143 (2005). As such, we need not address defendant's further contention that the trial court failed to question prospective jurors in compliance with Supreme Court Rule 431(b).

Reversed.

1-08-0973

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each case)

THE PEOPLE OF THE STATE OF ILLINOIS,

           Plaintiff-Appellee,

v.

MICHAEL SPENCER,

           Defendant-Appellant.

No. 1-08-0973

Appellate Court of Illinois
First District, Fourth Division

March 24, 2011

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court.

LAVIN and PUCINSKI, JJ., concur.

Appeal from the Circuit Court of Cook County.

Honorable John J. Scotillo, Judge Presiding.

For APPELLANT, State Appellate Defender, Chicago, IL (Michael J. Pelletier, Alan D. Goldberg, John Koltse, of counsel)

For APPELLEE, Cook County State's Attorney, Chicago, IL (Anita Alvarez, Alan J. Spellberg, Miles J. Keleher, Ugo H. Buzzi, of counsel)