NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2014
Decided March 25, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1704

| | |
|---|---|
| MICHAEL A. SPENCER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 08 C 85 |
| JOE PISTORIUS, et al., | |
| *Defendants-Appellees*. | Thomas M. Durkin, |
| | *Judge*. |

## O R D E R

Michael Spencer was driving near his home in Palatine, Illinois, when two police officers from the adjacent City of Rolling Meadows stopped and arrested him without a warrant for promoting prostitution, or "pandering." *See* 720 ILCS 5/11-16 (current version at 720 ILCS 5/11-14.3 (2015)). State prosecutors never pursued the pandering charge, but Spencer was convicted in state court of possessing cocaine with intent to deliver, *see* 720 ILCS 570/401, based on drugs and other evidence found in his car by the arresting officers. Spencer spent more than five years in prison on that conviction before the state appellate court overturned it on the ground that his car was searched in violation of the Fourth Amendment and thus the cocaine should have been suppressed.

The drug prosecution was dismissed, and no other charges were brought against Spencer.

In this action under 42 U.S.C. § 1983, Spencer has named as defendants the City of Rolling Meadows and the two City police officers, Detective Joe Pistorius and Investigator Mark Hinds, who arrested him and searched his car. Spencer claims that the individual defendants arrested him without probable cause and searched his car unlawfully (and, he adds, the City is required by 745 ILCS 10/9-102 to satisfy any judgment entered against its officers). He also claims, *see Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), that the City itself violated the Fourth Amendment because, he maintains, the individual defendants acted under authority of a City policy which effectively gave its police officers unchecked discretion to impound and search a vehicle any time the driver was arrested. The district court granted summary judgment to the defendants, and Spencer appeals. We conclude, based on the undisputed evidence submitted at summary judgment, that Pistorius and Hinds had probable cause to arrest Spencer and, incident to the arrest, lawfully searched the passenger compartment of his car. We further conclude, however, that the undisputed facts presented at the summary judgment stage failed to establish that the two officers had (or reasonably objectively could have believed that they had) probable cause to search the trunk of Spencer's car. As for the City of Rolling Meadows, it must remain in the case as an indemnitor, but summary judgment in its favor on the *Monell* claim was correct because Spencer submitted too little evidence for a jury to find that the officers were relying on a City policy when they searched his car.

I.

Spencer came to the attention of Rolling Meadows police in late 2005 after a police department employee had sought help in finding her 17-year-old daughter, A.K., who had run away from her Rolling Meadows home. The police did not have reason to believe that the young woman was in danger; she had telephoned her mother the day after she disappeared to say that she was not coming home, and she had called again the following week to report that she was "all right." Defendant Pistorius and other officers began contacting A.K.'s acquaintances. Her mother also reviewed the call log of A.K.'s cellphone to identify recently dialed numbers. One of those numbers, the officers learned, belonged to Spencer. When the officers contacted him, Spencer acknowledged knowing A.K. but not where to find her.

One of A.K.'s acquaintances was Lisa Candir, who told Defendant Pistorius that she had not seen A.K. for three months but had heard that the runaway was "picking up strange guys" at local shopping malls. Pistorius and another officer then interviewed Hanna Leonard at Spencer's house in the Village of Palatine, where she was living. Spencer was home at the time, and both he and Leonard insisted that they did not know A.K.'s whereabouts and invited the officers to search the home. In the basement Pistorius saw photography equipment, lingerie, and feather fans. Meanwhile, around this same time A.K. called home again to wish her sister a happy birthday.

About eleven weeks into their investigation, the police learned that Spencer's cellphone number also was the contact number on an erotic website. The website displayed provocative photographs of women, including A.K. and Candir, who was not a minor. Viewers of the website were invited to call Spencer's cellphone and arrange to hire women as escorts or to provide services including nude modeling, massage, and stripping. The website did not advertise sexual services or prostitution.

After viewing the website, two Rolling Meadows officers went to Candir's home. She was not present, but the officers spoke with her mother, who reported finding a hotel key and "sexy" clothing in Candir's bedroom. Candir learned from her mother about the officers' visit, and that same evening, January 4, 2006, she went to the police station and was interviewed. Candir asserted that Spencer's website really was a "call girl site" even though it did not advertise paid sexual services. Spencer managed the women, she explained, and received a portion of their fees. Sometimes, Candir added, Spencer supplied the women with drugs and deducted the cost from their cut of the fees. He had recruited her, she continued, to work as a nude model and "call girl." He booked hotel rooms where she and the other women met with clients. Candir confided that she was angry with Spencer because she had gotten caught up in the officers' search for A.K.

One of the officers stepped out of the interview to tell Defendant Pistorius about Candir's admission to working for Spencer as a "call girl." Pistorius and Defendant Hinds then drove to Spencer's neighborhood in Palatine and parked their unmarked car within view of his house. Forty-five minutes passed without incident. When Spencer backed his car from the garage and departed, the two Rolling Meadows officers followed for a short distance before signaling him to stop with their car's emergency lights. By then it was almost 9:00 p.m. Spencer turned into the parking lot of a public high school, parked the sedan in a marked space, shut off the engine, and

locked the car after exiting. Pistorius and Hinds identified themselves and asked if Spencer knew where to find A.K. He said no.

Defendant Pistorius arrested Spencer for pandering, which Illinois defined to include accepting compensation for arranging a prostitute's services. *See* 720 ILCS 5/11-16 (current version at 720 ILCS 5/11-14.3 (2015)). A frisk of Spencer netted $8,000 in currency from his pants pockets. After three other Rolling Meadows officers had arrived at the school and taken Spencer to the police station, Defendant Pistorius used Spencer's keys to unlock his car. Hinds searched the passenger compartment while Pistorius searched the trunk. Hinds found three cellphones and a laptop. In the trunk Pistorius found a metal box, about 12 inches square, which he unlocked using a key on Spencer's key ring. The box held several bundles of $100 bills and small plastic baggies of cocaine. Spencer's car was towed from Palatine to a commercial auto-repair shop. Two days later A.K. returned home.

State prosecutors declined to pursue the pandering case and instead accused Spencer of possessing the cocaine in the metal box with intent to deliver. *See* 720 ILCS 570/401. He moved to suppress the drugs and related evidence, but the trial judge denied that motion on the ground that Defendants Pistorius and Hinds had conducted a valid inventory search of Spencer's car. *See People v. Spencer,* 948 N.E.2d 196, 198–200 (Ill. Ct. App. 2011). Five years later, in March 2011, the Illinois appellate court overturned that ruling and reversed his conviction on the ground that the State had not met its burden of proving that Spencer's car was lawfully impounded and searched. *Id.* at 205. The City's impoundment policy authorized Rolling Meadows police, after arresting the driver of a car at a location other than a public roadway, to leave the car at the scene if the arrest occurred in (1) "the private driveway or residential parking lot of the arrestee," or (2) a parking lot "open to the public" if both the car's owner and a police supervisor consent to leaving it there. *Id.* at 203. The State argued that the school parking lot was "private" because, the State maintained, only vehicles with permits could park there, and so Spencer's car had to be towed. *Id.* at 203–04. But Pistorius admitted at the suppression hearing that he could not recall seeing any sign limiting the lot to school use only or warning that unauthorized vehicles would be towed. *Id.* at 204. Nor did the State offer any other evidence that the public could not park in the school lot when the school was closed. Given this absence of evidence to support the State's claim that the school lot was "private," the appellate court concluded that the State had not established that the inventory-search exception applied. *Id.* at 205.

The appellate court concluded that Spencer could not be retried without the cocaine and thus reversed his conviction outright. *Spencer*, 948 N.E.2d at 206. By this time Spencer's federal lawsuit had been pending for three years. He had filed it without counsel in January 2008, several weeks before he was sentenced in the state trial court and just before expiration of the two-year statute of limitations that governs § 1983 suits arising in Illinois. *See Wallace v. Kato*, 549 U.S. 384, 387–88 (2007). But the district court had stayed the suit, with Spencer's acquiescence, until the conclusion of his state appeal. *See id*. at 393–94; *Polzin v. Gage,* 636 F.3d 834, 836–37 (7th Cir. 2011); *Evans v. Poskon,* 603 F.3d 362, 363 (7th Cir. 2010). After that favorable decision, the district court recruited counsel for Spencer, and discovery proceeded.

In July 2013 the defendants moved for summary judgment. Defendants Pistorius and Hinds argued that the undisputed evidence establishes that they had probable cause to arrest Spencer for pandering and thus could search his *entire* car incident to arrest. They also argued, in the alternative, that the undisputed evidence establishes the existence of probable cause to search the car. Moreover, these defendants argued, they are shielded by qualified immunity for all of their actions. The City of Rolling Meadows, for its part, argued that a jury could not reasonably find from the evidence that his car was searched because of its impoundment policy. The City did not dispute, however, that under Illinois law it would be required to pay any judgment entered against the individual defendants.

In granting summary judgment for all defendants, the district court reasoned that the undisputed evidence establishes that Defendants Pistorius and Hinds had probable cause to arrest Spencer for pandering and also, after finding $8,000 in his pockets, probable cause to believe they would find evidence of that crime in his car. Moreover, the court thought, an arrestee's car left in a school parking lot would be a hazard, and so the decision to impound and search Spencer's car had been reasonable under the Fourth Amendment whether or not the Rolling Meadows impoundment policy was valid. Beyond this, the court added, the undisputed evidence establishes that the two officers had acted reasonably and thus were entitled to qualified immunity.

## II.

Spencer again is pro se, and in this court he first argues that disputed issues of material fact preclude summary judgment on his claim that Defendants Pistorius and Hinds arrested him without probable cause. Spencer insists that probable cause was

lacking because, he says, Candir's statement was coerced and she never told the police that she had engaged in prostitution or sex acts. And, Spencer continues, since prosecutors in the criminal case had relied exclusively on Candir's statement to establish probable cause, the defendant officers cannot now marshal additional facts to validate the arrest.

Probable cause to arrest exists if a reasonable police officer would be warranted in believing from the known facts that the suspect had committed or was committing an offense. *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013); *Matthews v. City of E. St. Louis,* 675 F.3d 703, 706 (7th Cir. 2012). Information from a reasonably credible witness who informs police that someone has committed a crime may establish probable cause, *see Abbott v. Sangamon County, Ill.,* 705 F.3d 706, 715–16 (7th Cir. 2013); *Matthews,* 675 F.3d at 706; *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007), particularly when the information given is consistent with the police investigation, *see United States v. Huebner*, 356 F.3d 807, 814–15 (7th Cir. 2004).

We agree with the district court that, on this evidence, the only conclusion to be drawn is that the defendant police officers had probable cause to arrest Spencer for pandering. Though it's technically true, as Spencer says, that Candir never said explicitly that she had engaged in "prostitution" or "sex acts," she did tell the police that she was working for Spencer as a "call girl," which the officers could have reasonably understood to mean prostitution. (MERRIAM-WEBSTER defines "call girl" as "a prostitute who arranges to meet with men who call her on the telephone." *Call girl,* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/callgirl (last visited March 19, 2015).)

Candir's statement gave Defendants Pistorius and Hinds reason to believe that, for a fee, Spencer was arranging for her and other young women to provide sexual services to his website clients, which is the essence of pandering. *See* 720 ILCS 5/11-16 (current version at 720 ILCS 5/11-14.3 (2015)). Candir's photograph on Spencer's website made it likely that she would have first-hand knowledge of his business, and her information corroborated other details that the Rolling Meadows police department had learned during its investigation. Candir had said, for example, that Spencer arranged hotel rooms for the women, which explains the key Candir's mother had found in her bedroom. Candir had said, too, that she posed for photographs in Spencer's basement, where Defendant Pistorius previously has seen photography equipment. And Candir had said that Spencer operated the website, which the officers knew because Spencer's

cellphone number was the contact number for that website. Although perhaps none of these additional facts, individually or collectively, would have allowed the police reasonably to conclude that Spencer's advertised escort service actually was a disguised prostitution service, Candir's "call girl" confession provided the link. The officers could draw on their common sense and experience to deduce that Spencer's "innocent" activities were a front for pandering. *See United States v. Cortez*, 449 U.S. 411, 419 (1981); *Huebner*, 356 F.3d at 814–15. Moreover, Candir's credibility was not undermined, as Spencer seems to think, even if she gave him up (and herself as well) out of fear that she might be arrested. *See United States v. Washburn*, 383 F.3d 638, 642–43 (7th Cir. 2004); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 970–71 (7th Cir. 2003). And contrary to Spencer's assertion, the arguments made in state court do not constrain our review; in assessing the existence of probable cause, we may evaluate everything known to the defendant officers when they made the arrest. *See United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011); *United States v. Burnside*, 588 F.3d 511, 518 (7th Cir. 2009).

Spencer next challenges the district court's conclusion that a jury could not reasonably find from the evidence that Defendants Pistorius and Hinds searched his car unlawfully. Spencer maintains that the officers haven't explained how the cash found in his pockets led them to believe that evidence of pandering might be found in his car.

At the time of Spencer's arrest in 2006 (we focus on the law as interpreted when these events occurred, since the two police officers assert qualified immunity as a defense, *see Davis v. Owens*, 973 F.2d 574, 576 (7th Cir. 1992)), police officers could search—incident to arrest—any area within the passenger compartment of a vehicle. *See New York v. Belton*, 453 U.S. 454, 460 (1981). And, at that time, the passenger compartment could be searched incident to a custodial arrest even if the suspect had been restrained or removed from the scene. *See United States v. Sholola,* 124 F.3d 803, 817–18 (7th Cir. 1997); *United States v. Willis,* 37 F.3d 313, 317 (7th Cir. 1994); *United States v. Barnes*, 374 F.3d 601, 604 (8th Cir. 2004). Here, after Spencer had been driven to the police station, Defendant Hinds found three cellphones in the front console and a laptop on the rear seat. Those places are in the passenger compartment, *Belton*, 453 U.S. at 460 n.4 (console); *United States v. Veras*, 51 F.3d 1365, 1372 (7th Cir. 1995) (rear seat), and were lawfully searched incident to Spencer's arrest. This outcome would be different if the same events were repeated today, since after *Arizona v. Gant*, 556 U.S. 332 (2009), the defendants could not have justified searching any part of Spencer's car incident to his arrest. *See United States v. Slone,* 636 F.3d 845, 851–52 (7th Cir. 2011);

*United States v. Stotler,* 591 F.3d 935, 939 (7th Cir. 2010). But in 2006 the passenger compartment was subject to search.

That wasn't true, though, about the car's trunk. Even before *Gant* the trunk of a car could not be searched incident to arrest. *See Belton,* 453 U.S. at 460 n.4; *United States v. Arnold,* 388 F.3d 237, 240 (7th Cir. 2004); *Barnes,* 374 F.3d at 603–04. And about the trunk and its contents, Spencer contends that the evidence introduced at summary judgment does not support a conclusion that Defendants Pistorius and Hinds had probable cause to search. Rather, says Spencer, a jury could reasonably find from the evidence in this record that the defendants lacked probable cause to search the trunk. We agree.

Any part of a car may be searched without a warrant if there is probable cause to believe that contraband or evidence of a crime will be found. *United States v. Ross,* 456 U.S. 798, 824 (1982); *Carroll v. United States,* 267 U.S. 132, 149 (1925); *United States v. Zahursky,* 580 F.3d 515, 523 (7th Cir. 2009). The defendants allot just nine sentences of their appellate brief to this issue. They maintain that Defendants Pistorius and Hinds had probable cause to believe that evidence of pandering would be found in the trunk because Spencer knew they had questioned Candir, he was carrying $8,000 in currency, and his cellphones and laptop were visible in the passenger compartment.

In the criminal case the state did not rely on probable cause to justify the search of Spencer's car. And now in this civil suit, Defendants Pistorius and Hinds fail to articulate what else besides the presence of money and phones could have led a reasonable police officer to believe that evidence of *pandering* would be found in the car's trunk. True enough, the presence of a large sum of cash and multiple cellphones is relevant to the question of probable cause, *see United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006); *United States v. Cardoza,* 713 F.3d 656, 660 (D.C. Cir. 2013); *United States v. Windrix,* 405 F.3d 1146, 1153 (10th Cir. 2005), but cash and phones are not inherently incriminating and cannot alone supply probable cause to search, *see United States v. Weir,* 703 F.3d 1102, 1103–04 (7th Cir. 2013); *United States v. Moreland,* 703 F.3d 976, 987 (7th Cir. 2012); *Reed,* 443 F.3d at 603; *United States v. $506,231 in U.S. Currency,* 125 F.3d 442, 451–52 (7th Cir. 1997).

The two police officers simply presume that having probable cause to *arrest* Spencer for pandering also gave them probable cause to search his car for evidence of that crime. That presumption is wrong. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 556

(1978); *United States v. Jones*, 696 F.2d 479, 484 (7th Cir. 1982); *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002); *United States v. Henderson*, 241 F.3d 638, 647–48 (9th Cir. 2000); *United States v. Hernandez*, 901 F.2d 1217, 1220 (5th Cir. 1990). At his deposition Pistorius said he would have anticipated finding drugs and records from the "call girl" business in Spencer's car, but that belief was not reasonable. The defendants have never asserted that Candir or another source reported that Spencer worked from, or stored business records in, his car instead of his home. Candir did say that Spencer sometimes paid "call girls" partly with drugs, and surely his business generated records. But the "critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher*, 436 U.S. at 556.

The defendant police officers, quite sensibly, haven't suggested they were worried that A.K. was captive in the trunk, since by then the young woman had appeared in public and telephoned home several times. So, as their appellate brief conveys, the defendants' assertion of probable cause really does hinge on the cash and cellphones. Defendant Pistorius, when deposed, said he thought that Spencer carried cash to pay the women. (Pistorius, though, did not say that he believed Spencer was on his way to do so.) We also know that, before Spencer was arrested, the Rolling Meadows police had linked him to one, specific cellphone (Spencer's number on A.K.'s cellphone matches the contact number on his website). Yet before searching the trunk the defendants already had found *$8,000* and *three* cellphones, including the cellphone that had been linked to Spencer. The two officers do not explain what—other than rank speculation—would have led them to believe that more cash or cellphones would be found that night at the scene of Spencer's arrest, particularly in the trunk of his car. *Cf. United States v. Verdugo*, 617 F.3d 565, 572–73 (1st Cir. 2010) (concluding that authorities who had stopped defendant's truck and executed arrest warrant on charge of drug trafficking had probable cause to search truck for cellphone used by defendant in multiple, intercepted conversations coordinating drug deal); *United States v. Gaskin*, 364 F.3d 438, 456–58 (2d Cir. 2004) (concluding that police officers, after arresting defendant, had probable cause to search his nearby car for cellphones since pat-down had uncovered only one of his three phones connected to drug smuggling).

In sum, the evidence at summary judgment cannot sustain the district court's conclusion that Defendants Pistorius and Hinds had probable cause to search the trunk of Spencer's car. As a fallback these defendants invoke qualified immunity, but their

argument is feeble. For one, they misunderstand this defense, since all they say is that qualified immunity protects them *because* they "have not violated a constitutional right." If that was true, invoking qualified immunity would be pointless. *See Stainback v. Dixon*, 569 F.3d 767, 770–71 (7th Cir. 2009); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009). What's more, reasonable police officers working in 2006 would not have conflated, as these officers do, the questions of probable cause to arrest and probable cause to search. *See Johnson v. Phillips*, 664 F.3d 232, 235, 237–38 (8th Cir. 2011) (concluding that, in 2006, no reasonable officer would have believed that probable cause existed to search trunk after valid arrest where officer had no suspicion particular to trunk); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (explaining that police must independently assess grounds to arrest and grounds to search, even where facts supporting arrest and search overlap). Accordingly, we must return this lawsuit to the district court for further proceedings concerning the search of the trunk of Spencer's car.

This outcome requires that we briefly address the last of Spencer's claims: that under *Monell* the City of Rolling Meadows itself violated his Fourth Amendment right to be free from unreasonable searches by promulgating an impoundment policy which, he says, gave the City's police officers excessive discretion in deciding whether to seize a vehicle and conduct an inventory search after taking the driver into custody. Although in this civil suit the defendant police officers have not relied on the City's policy or defended their actions as an inventory search, their choice to abandon the theory pressed by state prosecutors in the criminal case cannot defeat Spencer's *Monell* claim if in fact the City's impoundment policy was the "moving force" behind the constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2009).

But the testimony of Defendants Pistorius and Hinds, both in this civil action and the criminal case, leaves little doubt that they were not relying on the City's impoundment policy when they searched the trunk of Spencer's car. Pistorius testified that he would have searched the trunk regardless of the impoundment policy because he (mistakenly) believed that he had probable cause to search for evidence of pandering. Hinds testified that he, too, planned to search the trunk despite that searching the trunk was unnecessary to inventory and impound the car. And at the suppression hearing in the criminal case, Pistorius could not even say what the policy was. At one point he described the policy as mandating impoundment of *every* vehicle no matter the circumstances, another time he said that impoundment wasn't required if an occupant other than the arrestee could lawfully drive the vehicle from the scene, and

a third time he said that the impoundment policy varied depending on the nature of the arrest. *Spencer*, 948 N.E.2d at 199–200. (Moreover, though the parties don't discuss this point, Spencer's arrest and the search of his car occurred in *Palatine*, not Rolling Meadows, and nothing in this record suggests that the defendant officers could enforce a Rolling Meadows's policy outside the city limits.) No jury could reasonably find from the undisputed evidence that the city's alleged policy of giving officers unbridled discretion in deciding whether to impound a vehicle incident to the driver's arrest caused Defendants Pistorius and Hinds to search the trunk of Spencer's car, and so the causal link between the policy and the search is too tenuous to support a *Monell* claim. *See Thomas*, 604 F.3d at 306.

Finally, Spencer challenges the performance of the lawyer recruited by the district court to represent him at no cost. In this civil action, Spencer had no right to counsel, much less effective counsel, and his lawyer's performance cannot be a basis for further relief. *See Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 802 (7th Cir. 2000).

Insofar as Spencer's claim against Pistorius and Hinds about the search of his car concerns the trunk and its contents, the district court erred in granting summary judgment. To that extent the judgment is VACATED, and the case is REMANDED for further proceedings consistent with this order. In all other respects we AFFIRM the judgment.